SARA GUZMÁN RODRÍGUEZ, Plaintiff and Appellant, v. CELIA GUZMÁN RODRÍGUEZ, Defendant and Appellee; HERMINIA RODRÍGUEZ WIDOW OF GUZMÁN, Intervener and Appellee.

No. 11223. Argued July 7, 1954.—Decided September 16, 1955.

*José Sabater* for appellant. *Mario Báez y García* for appellee.
 *Eudaldo Báez García* for intervener.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The fundamental conclusion of the trial court is that a certain sale executed by Herminia Rodríguez widow of Guzmán in favor of her two daughters, Sara and Celia Guzmán Rodríguez, was a simulated sale. Sara alleged and attempted to prove that it was not a simulated sale; Celia admitted and succeeded in convincing the trial court that it was a simulated sale. There is sufficient proof in the transcript of evidence to support the trial court's conclusion.

The juridical facts to be considered for the purpose of affirming the judgment are as follows: On July 12, 1941, Herminia Rodríguez widow of Guzmán appeared before Notary Andrés Ruiz, Jr., of Mayagüez for the purpose of selling a certain house to her two daughters, Sara Guzmán Rodríguez, plaintiff-appellant herein, and Celia Guzmán Rodríguez, defendant-appellee herein, share and share alike, for the price of $3,500, which she allegedly received before the execution of the deed. The purchasers did not appear at the execution of the deed to accept the sale, but a verbal

agent appeared on their behalf and accepted it. The presumptive purchasers did not take possession of the property, or perform any acts of ownership, but, on the contrary, plaintiff-appellant, as attorney in fact for the mother, vendor of the property, performed on the latter's behalf the following acts: (a) she registered the house in the Rent Office in the name of the mother and as the latter's property; (b) she collected the rent from the house on behalf of her mother and delivered to the latter the rent collected from the tenants; (c) she reported the rent from the house in the name of the mother in the income-tax returns rendered by her as the latter's agent.

The mother became mentally deranged and on March 14, 1952, was adjudged incompetent by order of the San Juan Section of the former District Court of Puerto Rico. After the mother was adjudged incompetent, and approximately eleven years after the execution of the deed of sale, plaintiff-appellant Sara Guzmán Rodríguez appeared on May 15, 1952, before Notary Andrés Ruiz, Jr., of Mayagüez and ratified the deed of sale executed on her behalf by the verbal agent. The other sister not only refused to ratify the deed of sale but also opposed the partition of the property urged in this appeal, declaring that neither she nor her sister paid their mother the amount of the selling price stated in the deed of sale, to which the court gave credence.

The trial court concluded, as a question of law, that (1) since the sale or conveyance of the house was simulated, it was void and nonexistent because there was no consideration, according to §§ 1213(3) and 1227 of the Civil Code of Puerto Rico; (2) the sale could not be treated as a gift; and (3) the defense of nullity had not prescribed.

In fact, § 1213(3) of the Civil Code of Puerto Rico provides that there is no contract unless there is consideration for the obligation which may be established. Section 1227 provides that contracts without consideration have no effect

whatsoever. In his comments on the absolute or radical nullity of contracts, Castán points out that: "A contract may in our law be considered as nonexistent and wholly void in the following instances: (A) When *one of the elements essential to its formation is actually lacking* (hypothesis of § 1261) [our § 1213], namely: (*a'*) When there is absolute lack of consent, as in the case of an act that has been characterized empty or presumptive (absolutely simulated), or where such consent did not materialize for lack of conformity between the offer and the acceptance; (*b'*) want of meeting of two or more different and autonomous minds (Judgment of March 6, 1909) [Spain], rendered in the case of a contract executed by the father and his minor children); (*c'*) lack of object; (*d'*) *absence* or illicitness *of the consideration* (§ 1275) [our § 1227]; (*e'*) nonobservance of the conditions prescribed as an essential requisite (as in the case of a mortgage or *gift of real property without a public deed*); (B) Where the contract has been made in violation of a legal prescription or prohibition established for reasons of public order (hypothesis of § 4 of the Code) [our § 4], as in the case of agreements on future inheritances (§ 1271) [our § 1223], universal partnerships between spouses, transactions on civil status, usurious contracts of the Act of July 23, 1908, etc. . . . In proper terms, it is fit to state that a contract which is wholly nonexistent or void has no legal effect whatsoever as such. Its characteristic is precisely the lack of specific effects. *Quod nullum est nullum producit effectum.* Such a contract is deemed not to be executed under the law." 3 Castán, *Derecho Civil Español, Común y Foral,* 437–38 (8th ed. by Instituto Editorial Reus, 1954.) (Brackets ours.)

■■ Simulation may be absolute or relative and refers to consent. Puig Peña places it in the conscious divergence of consent: " . . . *the simulation* in which the parties in agreement wish to accomplish something *different* from that

stated by them in order to give the impression, for purposes of deceit, of a legal transaction which does not exist or which is different from that which they actually wish to carry out. Two principal types of simulation are inferred from this definition: *absolute*, in which the parties do not wish to carry out any transaction, and *relative (hidden transaction)* in which the parties conceal by their act a different act, which they actually wish (*a gift is concealed, for example, by a sale.*) The *absolute* simulation causes the *nonexistence* of the contract (January 29, 1945) between the parties... *In the relative simulation what counts between the parties is the concealed transaction*, thereby voiding the simulated transaction (*plus valet quod agitur quiam simulare concipitur*), provided the simulated (apparent) transaction *contains all the essential elements necessary for the existence of the hidden* (concealed) *transaction.*" IV–II Puig Peña, *Tratado de Derecho Civil Español* 22, (1951 ed. by Editorial Revista de Derecho Privado.) If a simulated transaction (the sale in the case at bar) does not contain all the elements necessary for the existence of the hidden transaction (the gift in the case at bar), the resulting juridical situation is that the sale as well as the gift are absolutely void.

◼ In this case the trial court concluded with keen certainty that the intended transaction could not be sustained as a gift, and its conclusion is entirely correct. As a matter of juridical fact, the transaction would be a gift that had not gone beyond pollicitation (offer). We know that a gift is perfected by the performance of three clear and definite juridical acts: (1) the pollicitation or *offer* of the thing sought to be donated to the donee; (2) the *acceptance* by the donee of the thing to be donated to him; and (3) the notice of acceptance to the donor.

◼ This case presents a preliminary question of capacity, since the verbal agent cannot accept gifts, and there is a subsequent question of perfecting, since notice of the acceptance of a gift by subsequent ratification by the donee

cannot be served on an incompetent donor. As to the first aspect of the question, if a gift can be deemed to be accepted by a verbal agent on behalf of the donee, the commentators are agreed that the gift cannot be deemed to be accepted if it involves real property, as is the case here. Says Scaevola: "Is it necessary to execute a power of attorney before a Notary in order to accept a gift of personal as well as of real property? Answer: As respects real property, the deed of power of attorney is indispensable; the power of attorney is an integral part of the written title which, according to § 633 [our § 575], should consist of a public deed in order that the gift may be valid." XI–2 Scaevola, *Código Civil* 739 (5th ed. by Instituto Editorial Reus, 1943.) Manresa says: "The donee must accept in his own right or through a person under the authority of a power of attorney. . . . To make a gift it is not necessary that the donee be present in the act; but neither is the acceptance by any person sufficient if he does not bear a special power of attorney to accept the gift, or a general power of attorney authorizing him to accept gifts or dispose of all kinds of property on behalf of the principal. Since there is involved an act which will injure a third person, since it would be an anomaly to recognize authority to any person who either presents a letter or manifests that he is acting by virtue of a verbal agency in a transaction of such importance to the lawmaker, and since § 630 [our § 572] speaks of specific powers of attorney and not of any kind of agency, we must infer that the power must appear in a public document. The agent of somebody else's business, *the verbal agent*, one who presents a general but insufficient power, etc., *performs a void act through the acceptance*. The donee may subsequently *ratify* the acceptance. Such a ratification will be valid *but only from the date thereof as a new and effective acceptance* by the donee." 5 Manresa, *Comentarios al Código Civil Español* 132 (6th ed. by Instituto Editorial Reus, 1951.)

As will be seen, even if we disregard the simulated contract (the sale) and consider it as a hidden or concealed contract (the gift), the acceptance by the verbal agent in the act of execution of the sale was not sufficient at law to consider at this time the hidden or concealed gift as duly accepted.

■ However, did the ratification by the alleged donee eleven years later cure the defect of lack of acceptance? This takes us to the second aspect of the question as to the capacity which the donor must have when he is notified of the new acceptance implied by the ratification. On this aspect of the question, Manresa says: "When must the donor have capacity? When the offer and the acceptance are simultaneous, there can be no question. If the acceptance takes place some time later, says Troplong, the donor must also have capacity at that time, for it is then when there is meeting of the minds, a requirement without which there is no gift. When the gift is not perfected in a single act —says Baudry Lacantinerie—it is necessary to distinguish between three phases: 1. The pollicitation made by the donor, namely, the offer made to the donee. 2. The acceptance of this pollicitation by the donee. 3. The notification of the acceptance to the donor. It is necessary for the donor to have the legal and the actual capacity at the time of the pollicitation, for it is then when he expresses his will to donate. *This dual capacity must also exist at the time of the notice of acceptance, for it is then that the contract is perfected.* But it is not necessary that it subsist during the period intervening between the pollicitation and the notice of acceptance. *Media tempora non nocent.* . . . It follows that the donor's capacity is necessary on the two aforesaid occasions: at the time of the offer and of the acceptance. We should bear in mind that the acceptance does not exist for the donor while he is unaware of its existence; therefore, as far as he is concerned the acceptance is effective as of the notice thereof, as we shall see when we

consider § 629 [our § 571]." 5 Manresa 118–19 (6th ed. by Instituto Editorial Reus, 1951.)

Also on this aspect of the question, Scaevola says: " . . . Still, supposing the donor becomes incapacitated, i. e., becomes insane, or is adjudged a spendthrift by the courts before the acceptance by the donee, will the gift be effective? For if death is the end of a natural person, the adjudication of incapacity restricts the civil capacity, and by analogy it seems fair to maintain likewise an analogous principle. And that is, in effect, the prevailing general opinion. It is true that there are authors who maintain a different view, as for example, Demante; yet Demolombe, Marcadí, Laurent etc., are the majority. Would it not be absurd to admit the possibility that a consensual contract be perfected by the consent given at a time when one of the parties thereto lacked capacity to contract? For in consensual contracts the vital nerve stems from the meeting of the minds; and although because of the special conditions of the contract of gift, which is but a mere promise, or in other words, because of its unilaterality, it is possible to break that instrumental continuity inherent in bilateral contracts, yet the contract, because of that particular act of purely gratuitous conveyances *inter vivos*, is not deprived of its nature. For consent to exist, it is necessary that there be a meeting of the minds (this is the purpose of the notification), and that by virtue of such meeting the fundamental unity of thoughts be produced, which is what constitutes the soul of the contract. That is why it is generally admitted that the donor should have full capacity not only at the time of the execution but also at the time of acceptance by the donee and of the notice. After all, we are concerned merely with a contract, the juridical process of which, instead of becoming one single instrument, branches off into successive steps; the sum of all the parts produces the same result. It is a sum composed of all its tract? No; just like the disintegration of the sums does

not modify its arithmetical condition nor alter its total."
11 Scaevola 728 (ed. cit.). As has been seen, the ratification
·of plaintiff-appellant was not sufficient at law to create the
notice of acceptance; therefore, the gift, as a hidden or con-
cealed contract, is void. We also agree with the trial court
.in that neither the adjudication of the property in payment
of outstanding indebtedness between the mother and the
daughters nor the return of that part which the mother
might have retained from the daughters' paternal inherit-
ance, would have prevailed according to the facts found
proved by the trial court. It was not a question of an ac-
·count stated which could have substituted the figurative value
·of the price. .

 On appeal to this Court, plaintiff-appellant charges
the trial court with the commission of four errors. The
first, dealing with the prescription of the defense of nullity,
pursuant to § 1253 of the Civil Code of Puerto Rico, in-
terposed by defendant-appellee, was not committed. As
stated by Castán, "A void contract, deemed to be nonexistent,
may not be the object of ratification or of convalidation by
lapse of time" (op. cit. 439). The prescription of § 1253
refers to voidable and not to void contracts "(a) In cases of
intimidation or violence from the day on which it has ceased;
(b) In those of errors or deceit or falsity of consideration,
from the date of the consummation of the contract (because,
.as stated by Manresa, the performance which the latter
presupposes permits one to actually appreciate the nature
and importance of the things and obligations and to see the
difference between the reality and that agreed upon);
(c) When the purpose of the action is to invalidate contracts
made by a married woman, without consent or competent
authority, from the date of the dissolution of the marriage;
(d) And when it refers to contracts executed by minors or in-
capacitated persons, from the date they were released from
guardianship (section 1301) [our § 1253]." Castán, op.
cit. 443.

The second error, charging that the finding of the trial court to the effect that no consideration was involved in the sale is incorrect, rests fundamentally on the weighing of the evidence presented in the trial court. Since that finding is not destitute of evidence and, on the contrary, is supported by documentary as well as by oral evidence, it is not erroneous in the sense contemplated by Rule 52(a) of the Rules of Civil Procedure of Puerto Rico.

Regarding the third error to the effect that the trial court erred in refusing to hold that the intervener and her daughters are *in pari delicto*, and that the court cannot alter the situation in which the parties have placed themselves, it has already been seen that the concealed contract was a gift which was never perfected. This being the situation, no state of law arose within which the parties could be considered as being bound by some implication of illicitness.

Nor is there any impediment on the part of defendant-appellee, and even of the intervener, to interpose the defense of nullity in the case of a contract which is void and non-existent, since that contract does not produce juridical effects of any kind whatever between the parties which might be binding on either of them.

The judgment appealed from will be affirmed.